**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4253

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICO LORODGE BROWN,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:20-cr-00223-KDB-DCK-1)

Argued:  March 10, 2023                          Decided:  May 3, 2023

Before NIEMEYER and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Senior Judge Floyd joined.  Judge Heytens wrote a separate opinion concurring in the judgment.

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  John G. Baker, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

After pleading guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), Rico Brown was sentenced to 15 years' imprisonment, an enhanced penalty that represents the mandatory minimum sentence required for such a violation when the provisions of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), are satisfied. ACCA provides that when a defendant violates § 922(g) and has "three previous convictions . . . for a violent felony or a serious drug offense . . . committed on occasions different from one another," he shall be given the enhanced sentence. *Id*. Brown's indictment did not allege the facts supporting the ACCA enhancement; instead, the district court found them as part of the sentencing procedure.

Even though we held in *United States v. Thompson* that district courts may, consistent with the Constitution, use information "found in conclusive judicial records" to determine *at sentencing* that the defendant has three qualifying convictions for offenses committed on different occasions, thus triggering the ACCA enhancement, 421 F.3d 278, 285–86 (4th Cir. 2005), Brown contends that in light of the Supreme Court's intervening decisions in *Descamps v. United States*, 570 U.S. 254 (2013), *Mathis v. United States*, 579 U.S. 500 (2016), and *Wooden v. United States*, 142 S. Ct. 1063 (2022), *Thompson* is no longer good law. He maintains that, in light of these Supreme Court cases and the Fifth and Sixth Amendments, ACCA's requirement that the defendant have committed the prior offenses *on different occasions* must be alleged in the indictment and found by a jury or admitted by the defendant in his guilty plea because that fact increases the penalty for his crime.

2

We conclude, however, that the ACCA enhancement remains a matter for sentencing. Under *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the facts that support a recidivism enhancement are resolved by the district court during sentencing, and ACCA provides just such a recidivism enhancement, as we recognized in *Thompson*. Despite Brown's arguments to the contrary, we conclude that the Supreme Court's decisions in *Descamps*, *Mathis*, and *Wooden* have not narrowed or overruled *Almendarez-Torres*. And if they have done so by implication, the Supreme Court must say so, not a court of appeals. Accordingly, we affirm.

I

On September 23, 2019, in Union County, North Carolina, Rico Brown sold a handgun to an undercover law enforcement officer. He was thereafter indicted for possession of a firearm while knowing that he had been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). At the time, the maximum sentence for that crime was 10 years' imprisonment, unless ACCA was applicable. *See* 18 U.S.C. § 924(a)(2) (2018). Under ACCA, when a defendant violates § 922(g) and has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," the mandatory minimum sentence is 15 years' imprisonment and the maximum sentence is life imprisonment. *Id.* § 924(e)(1). In this case, Brown's indictment did not allege whether he was subject to ACCA, leaving the applicability of the enhancement to be resolved at sentencing.

In January 2021, Brown pled guilty to the § 922(g)(1) offense. But before pleading guilty, he was advised that "the statutory punishment for a [§] 922(g) [offense] is a maximum term of imprisonment of ten years," except that "if 18 U.S.C. § 924(e)(1) [*i.e.*, ACCA] applies, and the defendant has three previous convictions by any court for a violent felony or a serious drug offense, the minimum term of imprisonment is 15 years, and the maximum term is life." Brown confirmed that he understood this, and the district court then found his guilty plea to be knowing and voluntary.

The presentence report prepared for sentencing concluded that Brown was indeed subject to ACCA's enhanced penalties based on three prior North Carolina convictions: (1) a 2008 conviction for robbery with a dangerous weapon, committed on July 14, 2007; (2) a second 2008 conviction for robbery with a dangerous weapon, committed on September 24, 2007; and (3) a 2013 conviction for common law robbery, committed on October 8, 2012. The proceedings following the two 2007 robbery charges were consolidated, and Brown was convicted of both robberies and sentenced to 46 to 65 months' imprisonment on May 13, 2008.

At the sentencing hearing, the district court adopted the presentence report and concluded that each of Brown's North Carolina robbery convictions qualified as a conviction for a violent felony under ACCA and that, based on the information from state court records included in the presentence report, the three robberies were committed on different occasions. The court therefore sentenced Brown under ACCA to the mandatory minimum sentence of 15 years' imprisonment.

4

Brown did not object to the accuracy of any information included in the presentence report pertaining to his criminal history, but he did object to the report's conclusion that he was subject to ACCA's enhanced penalties, arguing that "sentencing him under the ACCA would violate his Fifth and Sixth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) and *Alleyne v. United States*, [570 U.S. 99] (2013)." He reasoned that even if the *fact of his convictions* could constitutionally be found by the court at sentencing under the holding of *Almendarez-Torres*, the fact that the underlying offenses had been *committed on different occasions* should have been charged in his indictment and found by the jury or admitted by him in his guilty plea. Brown acknowledged that this court had rejected his precise argument in *Thompson*, but he argued that the Supreme Court's intervening decisions in *Descamps* and *Mathis* showed that the Court had adopted a narrower understanding of *Almendarez-Torres* and that "[i]n light of *Descamps* and *Mathis*, [the district court] should conclude that *Thompson* [was] no longer controlling precedent."

At his sentencing hearing on May 13, 2021, Brown reiterated the same argument while again acknowledging to the district court that "it does appear that . . . current Fourth Circuit precedent forecloses [it]." He noted, however, that there was "a current Supreme Court case pending" — namely, *Wooden v. United States* — that might show "that *Thompson* [was] decided wrongly." He also continued to press his earlier arguments made under *Descamps* and *Mathis*. The district court overruled Brown's objection, relying on "the existing authority of the Fourth Circuit," *i.e.*, *Thompson*.

From the district court's judgment, Brown filed this appeal. We thereafter placed his appeal in abeyance pending the Supreme Court's decision in *Wooden*, and after that decision was issued, the parties filed their briefs.

## II

ACCA provides for enhanced penalties for § 922(g) violations when (1) the defendant has three prior convictions for a violent felony or a serious drug offense and (2) those offenses were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Brown contends that the second prong — the "different occasions" phrase — constitutes an *element* of a distinct, aggravated § 922(g) offense that must be alleged in the indictment and be either found by the jury or admitted by the defendant in his guilty plea. To support his argument, he relies on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), and *Alleyne v. United States*, 570 U.S. 99, 103, 111 n.1 (2013) (holding that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury" but "not revisit[ing]" the "exception to this general rule for the fact of a prior conviction"). Brown acknowledges that the Supreme Court continues to recognize that the *fact of a prior conviction* remains an exception that may be found by the sentencing judge, and thus he focuses his argument on the second prong — the "different occasions" phrase. *See Apprendi*, 530 U.S. at 490; *Almendarez-Torres*, 523 U.S. at 244. He also acknowledges that we specifically rejected the argument

6

as to the "different occasions" phrase in *Thompson*, where we held that the district court could constitutionally determine at sentencing that the defendant committed qualifying offenses *on different occasions*.  421 F.3d at 285–86.

To avoid the consequence of *Thompson*'s binding authority, Brown argues that it has been "fatally undermined" by two different strands of "intervening Supreme Court precedent."  First, he contends that in reaching its holding, the *Thompson* court construed the scope of the *Almendarez-Torres* exception in a manner inconsistent with the Supreme Court's subsequent reasoning in *Descamps* and *Mathis*.  Second, he contends that "the *Thompson* majority relied on an interpretation of the different-occasions standard that is inconsistent with *Wooden*."  "Taken together," he maintains, *Descamps* and *Mathis*, combined with *Wooden*, "dictate that the ACCA enhancement creates an aggravated felon-in-possession offense" and that the Constitution requires that the "different-occasion element" of that aggravated offense "be charged in an indictment and either admitted by the defendant as part of a guilty plea or proven to a jury beyond a reasonable doubt at trial."

The government initially argued that "[t]he district court properly applied the Armed Career Criminal Act without requiring an allegation in the indictment or a finding by a jury that Brown committed his predicate offenses on different occasions."  Subsequently, however, the government advised us that, in light of *Wooden*, "the Solicitor General has determined that a jury must find, or a defendant must admit, that a defendant's predicates under the Armed Career Criminal Act were committed on occasions different from one another."  As it stands, therefore, the government has changed its position and now agrees

that Brown is correct on the merits of his argument, although it maintains that the error here was harmless.

While this is unusual, it does not follow that we are required to accede to the parties' view of such an important issue. This is especially so when we, sitting as a three-judge panel, may not be permitted to reach that conclusion given our precedents on this issue. *See McMellon v. United States*, 387 F.3d 329, 332–33 (4th Cir. 2004) (en banc) (recognizing that "one panel cannot overrule a decision issued by another panel" but that one panel may conclude that the prior decision is no longer binding because it "has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court").

Thus, the precise question before us is the relatively narrow one of whether our precedent holding that the district court should determine at sentencing whether ACCA's recidivism enhancement is applicable — including whether the defendant committed the three predicate offenses "on occasions different from one another" — is no longer binding in light of intervening Supreme Court decisions.

Beginning with some general principles, we recognize that in a federal prosecution, the Fifth and Sixth Amendments require that the government allege in the indictment all the *elements* of the crime charged and, unless the defendant waives his right to a jury trial and pleads guilty, prove each *element* to the jury beyond a reasonable doubt. *See Jones v. United States*, 526 U.S. 227, 232 (1999); *see also* U.S. Const. amend. V (requiring that crimes be prosecuted on a presentment or indictment); *id*. amend. VI (requiring that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury"). Thus, "[m]uch turns on the determination that a fact is an *element* of

8

an offense," as distinct from a *sentencing factor*. *Jones*, 562 U.S. at 232 (emphasis added); *see also Apprendi*, 530 U.S. at 500 (Thomas, J., concurring) ("All of these constitutional protections turn on determining which facts constitute the 'crime' — that is, which facts are the 'elements' . . . of a crime"). And in defining elements, the Court has held, *subject to one exception*, that the Constitution requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" be treated as an element of an aggravated offense — with the consequence that it must be alleged in any federal indictment, "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; *see also Alleyne*, 570 U.S. at 103, 111 n.1 (extending *Apprendi* and holding that "any fact that increases the mandatory minimum is an 'element,'" but continuing to recognize "a narrow exception to this general rule"). The exception preserved in both *Apprendi* and *Alleyne* is a penalty enhancement *based on recidivism — i.e.*, a defendant's prior convictions for crimes — as described in *Almendarez-Torres*. Because Brown's argument turns in large part on the proper understanding of the scope of that exception, we turn first to examining *Almendarez-Torres*.

In *Almendarez-Torres*, the defendant was given an enhanced penalty for an immigration offense, as authorized by 8 U.S.C. § 1326. That provision makes it a crime for a person who was previously deported from the United States to return without permission, and while that crime ordinarily carries a maximum sentence of 2 years' imprisonment, the statute also authorizes an enhanced sentence of up to 20 years' imprisonment if the initial deportation took place after the person was convicted of an aggravated felony. *See* 8 U.S.C. § 1326(a), (b)(2). The question presented was whether

the condition for the higher maximum sentence was an element of a separate crime or whether it was a "penalty provision" authorizing the court to impose an enhanced sentence based on the defendant's recidivism. *Almendarez-Torres*, 523 U.S. at 226. The Court concluded that it was the latter, *id*., and in doing so, it specifically considered and rejected the defendant's argument that "the Constitution requires Congress to treat recidivism as an element of the offense — irrespective of Congress' contrary intent," *id.* at 239. The Court explained that "recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Id.* at 243. Indeed, the Court gave special emphasis to that fact, stating that "recidivism . . . is as typical a sentencing factor as one might imagine." *Id*. at 230. And in the course of this discussion, the Court specifically identified ACCA as an example of another statute that provides for recidivism as a sentencing factor to be found by a court. *Id*. (citing 18 U.S.C. § 924(e)). The Court explained that recidivism was "distinct" from other sentence-enhancing factors insofar as "recidivism '*does not relate to the commission of the offense*, but goes to the punishment only, and therefore . . . may be subsequently decided.'" *Id.* at 244 (emphasis altered) (quoting *Graham v. West Virginia*, 224 U.S. 616, 629 (1912)).

The *Almendarez-Torres* Court noted further that, "[c]onsistent with [the] tradition" of treating recidivism as a sentencing matter for the court, it had recognized "long ago" that the government "need not allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime." 523 U.S. at 243–44 (emphasis omitted) (citing *Graham*, 224 U.S. at 624; *Oyler v. Boles*, 368 U.S. 448, 452 (1962); *Parke v. Raley*, 506 U.S. 20, 27 (1992)). Thus, the Court explained, "to hold that

the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as [a sentencing factor] going to the punishment only." *Id.* at 244 (cleaned up). The Court concluded that the Constitution did not require that "abrupt" recharacterization of recidivism, and it accordingly "reject[ed] petitioner's constitutional claim that his recidivism must be treated as an element of his offense." *Id.* at 247.

*Almendarez-Torres* thus stands for the proposition that facts showing *recidivism* are distinct from other facts that alter the statutory sentencing range for the crime charged and that the Constitution does not require that facts demonstrating recidivism be treated as elements of a distinct, aggravated offense. Indeed, the Supreme Court itself confirmed this understanding of the scope of its *Almendarez-Torres*' holding in *Jones*, stating that its "precise holding" in that case was that "recidivism increasing the maximum penalty need not be . . . charged" in the indictment and that this "holding . . . rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element." *Jones*, 526 U.S. at 248–49.

Thereafter, in *Apprendi*, *Almendarez-Torres* was again left undisturbed. To be sure, the *Apprendi* Court observed that "it [was] arguable that *Almendarez-Torres* was incorrectly decided." *Apprendi*, 530 U.S. at 489. Yet, the *Apprendi* Court nonetheless chose not to "revisit" *Almendarez-Torres* and instead to "treat *the case* as a narrow exception to the general rule." *Id*. at 490 (emphasis added). It identified two "reasons supporting" its recognition of this recidivism exception. *Id*. at 496. First, tracking the rationale of *Almendarez-Torres* itself, the *Apprendi* Court explained that "[w]hereas

11

recidivism 'does not relate to the commission of the offense' itself," the fact at issue before it was whether, in committing a lesser included firearm offense, the defendant had acted with a particular purpose, which went "precisely to what happened in the 'commission of the offense.'" *Id.* (quoting *Almendarez-Torres*, 523 U.S. at 244). Second, the *Apprendi* Court reasoned that "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." *Id.* The Court thus recognized, in shorthand form, the *Almendarez-Torres* exception, stating that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added). There was no discussion in *Apprendi* suggesting that with that holding, the Court intended to modify or narrow the scope of the *Almendarez-Torres* holding, even though the *Apprendi* Court referred to the recidivism exception based on that decision simply as "the fact of a prior conviction." *Id*.

After *Apprendi*, defendants around the country who had been convicted of § 922(g) offenses relied on it to argue that their Fifth and Sixth Amendment rights had been violated when district courts determined *at sentencing* that ACCA's enhanced penalties were applicable. They urged that in light of *Apprendi*, courts should treat ACCA's requirements as *elements* of a distinct, aggravated § 922(g) offense. Those arguments, however, were uniformly rejected by every court of appeals — including our own — and they did so by recognizing that *Almendarez-Torres* remained binding law, notwithstanding *Apprendi*. *See*

12

*Thompson*, 421 F.3d 278; *see also, e.g.*, *United States v. Moore*, 286 F.3d 47, 51 (1st Cir. 2002) ("In the post-*Apprendi* era, we have ruled with a regularity bordering on the monotonous that, given the explicit exception and the force of *Almendarez-Torres*, the rationale of *Apprendi* does not apply to sentence-enhancement provisions based upon prior criminal convictions," including ACCA); *United States v. Santiago*, 268 F.3d 151, 155 (2d Cir. 2001); *United States v. Blair*, 734 F.3d 218, 226–28 (3d Cir. 2013); *United States v. White*, 465 F.3d 250, 254 (5th Cir. 2006) (per curiam); *United States v. Burgin*, 388 F.3d 177, 183–87 (6th Cir. 2004); *United States v. Morris*, 293 F.3d 1010, 1012–13 (7th Cir. 2002); *United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015); *United States v. Grisel*, 488 F.3d 844, 845–47 (9th Cir. 2007) (en banc), *abrogated in part on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018); *United States v. Michel*, 446 F.3d 1122, 1132–33 (10th Cir. 2006); *United States v. Spears*, 443 F.3d 1358, 1361 (11th Cir. 2006); *United States v. Thomas*, 572 F.3d 945, 952 n.4 (D.C. Cir. 2009).

While Brown accepts the continued vitality of the *Almendarez-Torres* exception insofar as it relates to the mere *fact of a prior conviction*, he contends that the *Almendarez-Torres* exception does not reach ACCA's second requirement — that the prior convictions be for offenses *committed on different occasions*. Yet, most, if not all, of the courts of appeals — again including our own — have also considered and rejected that argument. *See Thompson*, 421 F.3d at 284–87; *see also, e.g.*, *Santiago*, 268 F.3d at 156–57 (Sotomayor, J.) ("[W]e are satisfied . . . that § 924(e)'s 'different occasions' requirement falls safely within the range of facts traditionally found by judges at sentencing and is sufficiently interwoven with the facts of the prior crimes that *Apprendi* does not require

different fact-finders and different burdens of proof for Section 924(e)'s various requirements"); *Blair*, 734 F.3d at 226–28 (relying on "the continuing control of *Almendarez-Torres*" to reject the argument); *Burgin*, 388 F.3d at 186 ("[W]e conclude that the determinations by a district court that prior felony convictions exist and were committed on different occasions, are so intimately related that the 'different occasions' requirement of § 924(e) sufficiently comes within the exception in *Apprendi* for a prior conviction"); *Morris*, 293 F.3d at 1012–13 ("Unless and until the Court chooses to overrule *Almendarez-Torres*, we are bound by it. . . . Morris has failed to articulate a reasoned basis for distinguishing [whether the predicate offenses were committed on different occasions] from other factors traditionally considered in enhancing a sentence based on recidivism"); *Harris*, 794 F.3d at 887 ("Whether prior offenses were committed on different occasions is among the recidivism-related facts covered by the rule of *Almendarez-Torres*"); *United States v. Harris*, 447 F.3d 1300, 1304 (10th Cir. 2006) (holding that the "separateness [of occasions] falls within [*Apprendi*'s] prior crimes exception"); *United States v. Longoria*, 874 F.3d 1278, 1283 (11th Cir. 2017) (per curiam) ("Longoria's claim that his Fifth and Sixth Amendment rights were violated by the District Court determining his convictions occurred on different occasions is unavailing").

Most relevant here, of course, is our *Thompson* precedent, which clearly rejected the precise argument that Brown raises, relying on the full scope of the *Almendarez-Torres* exception. While the dissenting judge in *Thompson* did argue that *Almendarez-Torres* had been limited to the "fact of a prior conviction" and not to facts "*about* a prior conviction," 421 F.3d at 292 (Wilkins, C.J., dissenting), the majority held that in applying ACCA's

14

recidivism enhancement, sentencing courts could consult "conclusive judicial records" from the defendant's prior criminal proceeding, "take notice of the . . . dates [and] locations of [the prior offenses]" as reflected in those records, as well as other information relevant to the "different occasions" question, and on that limited basis determine whether the government had established that the defendant had committed the offenses that resulted in his three prior qualifying convictions *on separate occasions*. *Thompson*, 421 F.3d at 286. Because *Almendarez-Torres* had held that the Constitution did not require that "recidivism . . . be treated as an element," 523 U.S. at 247, we concluded that limited judicial fact-finding with respect to the defendant's prior convictions did not violate the defendant's Fifth or Sixth Amendment rights, *Thompson*, 421 F.3d at 284–87.

Brown does indeed acknowledge that *Thompson* is squarely on point and thus would foreclose his argument if it were still good law. But he maintains that *Thompson* is no longer controlling because it has been "fatally undermined" by the Supreme Court's intervening decisions in *Descamps*, *Mathis*, and *Wooden*. We therefore must turn to those cases to determine whether they overruled or narrowed the Court's earlier holding in *Almendarez-Torres*.

First, the Supreme Court's decision in *Wooden* — the most recent of the cases relied on by Brown and the one prompting the government to reconsider its views on ACCA's sentencing enhancement — addresses specifically the meaning of the "different occasions" phrase in ACCA's second prong. *See* 142 S. Ct. at 1068. The *Wooden* Court concluded that the word "occasion" in ACCA should be given its "ordinary meaning" — "essentially an episode or event," *id.* at 1069, and that, as a result, "a range of circumstances may be

relevant to identifying" whether multiple criminal offenses were committed on one occasion or separate ones, *id.* at 1071; *see also id.* at 1071 n.4. Key among the factors recognized by the Court as relevant to the inquiry were the timing of the offenses and their locations. *See id.* at 1071. Thus, the Court explained that "a single factor — especially of time or place — can decisively differentiate occasions," and it noted with approval that "[c]ourts . . . have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a significant distance." *Id.* (cleaned up). By contrast, "a continuous stream of closely related criminal acts at one location" represents "a single occasion," *id.*, even if those crimes were committed "sequentially rather than simultaneously," *id.* at 1068. Thus, the Court held that to determine whether prior offenses were committed on different occasions, courts should apply a "multi-factored" test in which "a range of circumstances may be relevant." *Id*. at 1070–71.

*Wooden* is thus a statutory decision, not a constitutional one, and the Court stated as much, noting that while "[t]wo *amici curiae* [had] briefed . . . whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion," it was "not address[ing] that issue because Wooden did not raise it." 142 S. Ct. at 1068 n.3. The *Wooden* decision not only did not address the constitutional question that is before us — whether ACCA's requirement that the defendant have committed his prior crimes on different occasions must be treated as an element of an aggravated offense — it did not even cite *Almendarez-Torres*, which held that such recidivism provisions are not elements of an aggravated offense, *Almendarez-Torres*, 523 U.S. at 239–47.

16

Given that *Wooden* specifically stated that it was *not* addressing the constitutional question presented in this case, it is hardly controlling on the question of whether recidivism is a sentencing matter or an element of an aggravated offense so as to undermine our holding in *Thompson*. Indeed, as a matter of statutory interpretation, *Wooden* is largely consistent with *Thompson*, as we noted in *Thompson* that "several factors" are relevant to the different occasions inquiry, chief among them "the date and location of an offense." *Thompson*, 421 F.3d at 285–86. In short, *Wooden* clarifies *what* is relevant to determining that the defendant's prior predicate offenses were committed on different occasions, but it is silent as to *who* (judge or jury) should make that determination. As such, notwithstanding Brown's claim to the contrary, *Wooden* does not undermine the validity of our holding in *Thompson*. *Accord United States v. Reed*, 39 F.4th 1285, 1295–96 (10th Cir. 2022) (emphasizing that "recently, when given the opportunity to decide 'whether the Sixth Amendment requires that a jury . . . resolve whether prior crimes occurred on a single occasion[,]' . . . the Supreme Court declined to reach the issue" and reasoning that while "[t]he Supreme Court may" address the issue in the future "and reach a different result" than the Tenth Circuit previously had, its own precedent on the issue would remain binding "until then" (quoting *Wooden*, 142 S. Ct. at 1068 n.3)); *United States v. Stowell*, 40 F.4th 882, 885 (8th Cir. 2022) (concluding that "[t]he problem" with the defendant's *Apprendi* argument as to ACCA's occasions phrase "is that [it] is foreclosed by [Eighth Circuit] precedent" and that "nothing in *Wooden* changed this"), *vacated by grant of reh'g en banc*, No. 21-2234, 2022 WL 16942355 (8th Cir. Nov. 15, 2022).

17

In addition to *Wooden*, Brown also relies on *Descamps* and *Mathis* to argue that, despite our prior holding in *Thompson*, we are compelled to conclude that ACCA's different occasions requirement is an element of an aggravated offense, rather than a sentencing factor for the district court to determine. But this argument can be made only if *Descamps* or *Mathis* either overruled or narrowed the holding of *Almendarez-Torres*. We now turn to those decisions.

First, neither *Descamps* nor *Mathis* considered ACCA's "different occasions" phrase. Instead, both addressed ACCA's first requirement that the defendant have "three previous convictions . . . for a violent felony or a serious drug offense," 18 U.S.C. § 924(e)(1), as those terms are statutorily defined, *see id.* § 924(e)(2)(A), (B), and, in particular, the categorical approach required for determining whether prior convictions qualified as predicates. Prior to *Descamps* and *Mathis*, the Supreme Court had long held that when determining whether one of a defendant's prior convictions qualified as a predicate conviction for ACCA, sentencing courts were to use the "categorical approach," which involved "'look[ing] only to the statutory definitions' — *i.e.*, the elements — of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps*, 570 U.S. at 261 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In cases like *Taylor* and *Shepard v. United States*, 544 U.S. 13 (2005), the Court had also developed a "modified categorical approach," which, when applicable, permitted the sentencing court "to examine a limited class of documents" from the defendant's prior criminal proceeding in order to determine whether the resulting conviction qualified as an ACCA predicate. *Descamps*, 570 U.S. at 262.

At issue in both *Descamps* and *Mathis* was the question of when a court could apply the modified categorical approach to facilitate the determination of whether a prior conviction qualified as an ACCA predicate. Specifically, in *Descamps*, the Court held "that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." 570 U.S. at 258. Instead, *Descamps* confirmed, the modified categorical approach may only be employed "when a defendant was convicted of violating a divisible statute" with "alternative elements . . . [that] effectively creates several different crimes," and then it may be used only to determine "which [crime] the defendant was convicted of," so that the sentencing court may then determine whether the elements of that crime establish that it is categorically a "violent felony" or a "serious drug offense." *Id.* at 263–64 (cleaned up). Similarly, in *Mathis*, the Court held that if the statute of conviction "enumerates various [alternative] *means* of committing a single element," rather than alternative *elements*, then the modified categorical approach could not be used, thus making it critical for courts to determine correctly whether the items enumerated in an alternatively phrased statute of conviction were "elements" or "means." 579 U.S. at 506 (emphasis added). Thus, the *holdings* of *Descamps* and *Mathis* contribute nothing to the issue before us.

Brown, however, seizes on limited portions of the Court's reasoning in those decisions to argue that they demonstrate that the Court has, by negative inference, narrowed the *Almendarez-Torres* exception to include only the fact that the defendant was previously convicted of a particular crime and that other facts establishing the defendant's recidivism must be alleged in indictments and proved to juries as elements of an aggravated offense.

19

In both *Descamps* and *Mathis*, the Court explained that its caselaw "establishing [an] elements-centric, 'formal categorical approach'" for evaluating whether a defendant's prior convictions qualified as ACCA predicate convictions had consistently relied on "three grounds." *Descamps*, 570 U.S. at 267; *accord Mathis*, 579 U.S. at 510. The first of those was "ACCA's text and history" — namely, that by "increas[ing] the sentence of a defendant who has three 'previous *convictions*' for a violent felony," "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts *underlying the prior convictions*." *Descamps*, 570 U.S. at 267 (emphasis added) (quoting *Taylor*, 495 U.S. at 600); *see also Mathis*, 579 U.S. at 511. A second reason relied on was grounded on "the practical difficulties and potential unfairness of a factual approach," *Descamps*, 570 U.S. at 267 (quoting *Taylor*, 495 U.S. at 600), with the Court cautioning that "[s]tatements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary," *Mathis*, 579 U.S. at 512 (quoting *Descamps*, 570 U.S. at 270). And the third reason reiterated in *Descamps* and *Mathis* for strictly limiting the use of the modified categorical approach was "the categorical approach's Sixth Amendment underpinnings." *Descamps*, 570 U.S. at 269; *see also Mathis*, 579 U.S. at 511–12.

Specifically, noting that *Apprendi* had "held that '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,'" the *Descamps* Court observed that because a district "court's finding of a predicate offense [under ACCA] indisputably increases the maximum penalty[,] . . . that finding would (at

the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." 570 U.S. at 269 (quoting *Apprendi*, 530 U.S. at 490). The Court further noted that it had previously recognized that "[t]hose concerns . . . counsel[led] against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime," hence the "insistence on the categorical approach." *Id.* (quoting *Shepard*, 544 U.S. at 25 (plurality opinion)). By contrast, *Descamps* explained, by allowing the modified categorical approach to be employed whenever the statute of conviction encompasses more conduct than a qualifying offense, the lower court's "ruling [had] flout[ed] [that] reasoning . . . by extending judicial factfinding beyond the recognition of a prior conviction." *Id.* And therein lay "the constitutional rub":

> The Sixth Amendment contemplates that a jury — not a sentencing court — will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense — as distinct from amplifying but legally extraneous circumstances. Similarly, as *Shepard* indicated, when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment.

*Id.* at 269–70 (citation omitted).

*Mathis* subsequently echoed that "serious Sixth Amendment concerns" had been one of the grounds for the Court's development of and adherence to a strict categorical approach for the identification of qualifying predicate convictions. *See* 579 U.S. at 511–12. And, in elaborating on those "concerns," *Mathis* stated as follows:

This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction. See *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). That means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense. He is prohibited from conducting such an inquiry himself; and so too he is barred from making a disputed determination about 'what the defendant and state judge must have understood as the factual basis of the prior plea' or 'what the jury in a prior trial must have accepted as the theory of the crime.' *He can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.*

*Id*. (emphasis added) (citations omitted).

While the Supreme Court's decisions in *Descamps* and *Mathis* were focused on carrying out the restrictions of the categorical approach, their language at times did arguably create some tension with *Thompson*, where we held that a district court may, consistent with the Fifth and Sixth Amendments, determine at sentencing that conclusive judicial records demonstrate that the offenses giving rise to the defendant's three prior qualifying convictions *were committed on different occasions* and on that basis apply ACCA as a sentencing enhancement. *See United States v. Span*, 789 F.3d 320, 331–32 (4th Cir. 2015) (observing that "[t]he tension between *Descamps* and *Thompson* . . . is apparent" but also suggesting that "the Supreme Court's statements in *Descamps*, while foreboding, will most likely be confined to identification of a violent felony under the categorical approach"). Yet, the facts other than the fact of conviction were understood in both *Descamps* and *Mathis* to be those facts that would show that a prior conviction involved *conduct* amounting to a "violent felony" or "serious drug offense," not the facts that would show that prior offenses were committed on different occasions. *See Descamps*, 570 U.S. at 267 (noting that a sentencing court may "look *only to the fact that the defendant*

22

*had been convicted of crimes* falling within certain categories, and *not to the facts underlying the prior convictions*" (quoting *Taylor*, 495 U.S. at 600)); *Mathis*, 579 U.S. at 509 (emphasizing that a court may only consider the *fact of conviction* and *not the underlying facts* of each conviction and stating, "How a given defendant actually perpetrated the crime — what we have referred to as the underlying brute facts or means of commission — makes no difference" (cleaned up)); *id.* at 510–11 (noting that "a sentencing judge may look only to the elements of the offense, not to the facts of the defendant's *conduct*" and that the sentencing judge "cannot go beyond identifying the crime of conviction to explore *the manner* in which the defendant committed that offense" (emphasis added) (cleaned up)).  The facts about whether prior offenses were committed *on different occasions* were never considered in either *Descamps* or *Mathis*.  Thus, whereas *Almendarez-Torres* recognized that sentencing courts may find such other facts as necessary to show recidivism, *Descamps* and *Mathis* never questioned that.  As such, *Almendarez-Torres* was left undisturbed in its holding that recidivism facts may be resolved by the sentencing judge.

Moreover, the same tension suggested as existing between *Descamps* and *Mathis*, on the one hand, and *Thompson*, on the other, would also exist between *Descamps* and *Mathis*, on the one hand, and *Almendarez-Torres*, on the other.  In *Almendarez-Torres*, the Court specifically held that the Constitution does *not* "require[] Congress to treat recidivism [increasing the statutory sentencing range] as an element of the offense" but instead permits recidivism to be a sentencing factor found by the court. 523 U.S. at 239; *see also id.* at 247 ("For these reasons, we reject petitioner's constitutional claim that his

recidivism must be treated as an element of his offense"); *Jones*, 526 U.S. at 248–49 (recognizing that "the precise holding" of *Almendarez-Torres* was "that recidivism increasing the maximum penalty need not be . . . charged" as an element of an aggravated offense and that that "holding . . . rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element"). Yet in *Descamps* and *Mathis*, the Court never explored that tension with *Almendarez-Torres*' holding; indeed, the opinions for the Court did not even cite *Almendarez-Torres*. Until the Supreme Court recognizes and resolves any alleged tension, or limits or overrules *Almendarez-Torres*, we are bound to apply it. *Accord Blair*, 734 F.3d at 227 (holding, after *Descamps*, that the defendant's constitutional argument with respect to ACCA's different occasions requirement "fail[s] . . . because *Almendarez-Torres* has not been narrowed and remains the law"); *see also United States v. Walker*, 953 F.3d 577, 581 (9th Cir. 2020) (rejecting defendant's argument that its precedent on the issue had been "implicitly overruled by *Mathis*," reasoning that "*Mathis* . . . only proscribed judges from determining whether a given factual scenario substantially qualifies as a predicate offense" and "did not speak to courts looking at dates of conviction").

At bottom, because ACCA's sentencing enhancement for § 922(g) offenses is indisputably based on the defendant's recidivism, we conclude that, under *Almendarez-Torres*, the facts establishing the enhancement remain sentencing facts, not elements of a separate aggravated crime. Those sentencing facts are that the defendant have three prior convictions for specified offenses committed on different occasions, and together they form the basis of a single "penalty provision [that] simply authorizes a court to increase

the sentence for a recidivist." *Almendarez-Torres*, 523 U.S. at 226. Importantly, those recidivism facts do "not define a separate crime." *Id*. And, "[c]onsequently, neither the statute nor the Constitution requires the Government" to treat ACCA's different occasions requirement "as an element of" an aggravated version of one of the § 922(g) offenses. *Id.* at 226–27, 247. Moreover, the facts addressed by *Almendarez-Torres* are *recidivism facts* and are therefore distinct from the facts referred to in *Descamps* and *Mathis*, which addressed and prohibited consideration of the facts of conduct *underlying each prior conviction*. *See Descamps*, 570 U.S. at 267; *Mathis*, 579 U.S. at 509–10.

We understand Brown's argument to be that language in *Descamps* and *Mathis* shows that *Apprendi* had excepted from an indictment and jury *only* the simple *fact of a prior conviction*, demonstrating that the *Almendarez-Torres* exception is more limited than previously understood. But the Court's analysis in *Descamps* and *Mathis*, which did not discuss *Almendarez-Torres*, was guided by the binary question before the Court in both cases regarding whether the first prong of the ACCA enhancement — whether the defendant has three previous qualifying convictions — is found by the *fact of a prior conviction* or by the *facts underlying the prior conviction*. Those decisions never suggested that they were limiting or narrowing *Almendarez-Torres*' application with respect to *facts demonstrating the defendant's recidivism*. Rather, they were addressing only the one aspect of recidivism that required a showing of three prior *convictions*.

Indeed, against the background of *Almendarez-Torres* and the rationale for recognizing an exception to *Apprendi* based on it, Brown's argument that the exception has been limited to the mere fact of conviction would lead to irrational consequences. To

begin, it appears that *Apprendi* could not have narrowed *Almendarez-Torres* in the manner that Brown suggests without reversing the actual result that the *Almendarez-Torres* Court reached. The statutory enhancement there required that the defendant's prior deportation have occurred "*subsequent to*" the predicate conviction. 8 U.S.C. § 1326(b)(2) (emphasis added). Thus, to find that the defendant was subject to the enhanced penalty provided by § 1326(b)(2), the sentencing court had to find not only that the defendant had been convicted of an aggravated felony but also that he had been convicted of that felony *before* his previous deportation. This sequence was essential. Yet, despite the fact that the sentencing court could apply the enhanced penalty only if it made this additional finding, *Almendarez-Torres* held that "Congress intended [§ 1326(b)(2)] to set forth a sentencing factor" for a judge's determination, rather than an element of "a separate crime." 523 U.S. at 230. And it further held that the Constitution permitted Congress to make that choice and elect to "authorize courts to impose longer sentences upon *recidivists* who commit a particular crime." *Id*. at 238 (emphasis added). This demonstrates that we, as an intermediate court, are not at liberty to read the "fact of a prior conviction" exception preserved in *Apprendi* and *Alleyne* as literally limited to the bare fact of a prior conviction. Otherwise, the result reached in *Almendarez-Torres* could not have stood. But yet all agree that the Supreme Court has not overturned *Almendarez-Torres*, notwithstanding repeated calls from one member of the Court to do so. *See, e.g.*, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1253 (2018) (Thomas, J., dissenting) ("The exception recognized in *Almendarez-Torres* for prior convictions is an aberration, has been seriously undermined by subsequent precedents, and should be reconsidered"); *Mathis*, 579 U.S. at 522 (Thomas, J.,

concurring); *Descamps*, 570 U.S. at 280–81 (Thomas, J., concurring in the judgment); *Shepard*, 544 U.S. at 28 (Thomas, J., concurring in part and concurring in the judgment) ("*Almendarez-Torres* was wrongly decided" and, "in an appropriate case, this Court should consider [its] continuing viability"); *see also Apprendi*, 530 U.S. at 499–523 (Thomas, J., concurring) (writing "separately to explain [his] view that the Constitution requires a broader rule than the Court adopts," with no fact of a prior conviction exception).

Moreover, *Almendarez-Torres* was based on the rationale that "*recidivism* does not relate to the commission of the [instant] offense, *but goes to the punishment only*." 523 U.S. at 244 (cleaned up). And recognizing this, *Apprendi* explained that the *Almendarez-Torres* exception was based on facts *distinct from the facts of the crime being prosecuted*. *See Apprendi*, 530 U.S. at 488. The Court, in its decisions subsequent to *Almendarez-Torres*, has not undermined or dismissed the rationale that lies at the heart of *Almendarez-Torres*. This "distinct nature" of recidivism, which is defined by *what the defendant did in the past* before the conduct of his charged crime, is a sound reason to conclude — as, indeed, the Supreme Court has held — that the Constitution does *not* require "recidivism [to] be treated as an element of" an aggravated offense. *Almendarez-Torres*, 523 U.S. at 244, 247 (cleaned up). Yet, despite this rationale inherent in *Almendarez-Torres*, Brown would have *the jury* decide whether prior offenses were committed on different occasions, even before *the court* at sentencing had found the fact of the prior convictions.

On a more practical level, and one implicating fundamental fairness, if recidivism were to be understood as an element of an aggravated offense, the result would be that any defendant who exercised his right to a jury trial could face having certain portions of his

criminal history dragged in front of the jury tasked with deciding whether he has committed the instant offense. Thus, for example, if Brown were correct, he would not simply have been charged with possessing a firearm while knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1); he would have been charged with the aggravated crime of possessing a firearm while knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year *and* after "committ[ing] on occasions different from one another" three crimes that qualify categorically as violent felonies or serious drug offenses.

Of course, a defendant charged with such an aggravated offense who chose to go to trial might be able to simply stipulate that he had three prior predicate convictions for crimes that occurred on different occasions. *See Old Chief v. United States*, 519 U.S. 172, 191–92 (1997). But "[e]ven if a defendant's stipulation were to keep the name and details of the previous offense[s] from the jury, jurors would still learn, from the indictment, the judge, or the prosecutor, that the defendant had committed" three offenses that qualify as violent felonies or serious drug offenses. *Almendarez-Torres*, 523 U.S. at 235 (citation omitted). And the Supreme Court "has long recognized [that] the introduction of evidence of a defendant's prior crimes risks significant prejudice" and that "'evidence of the . . . *nature* of the prior offense'" only increases that risk. *Id.* (quoting *Old Chief*, 519 U.S. at 185). Thus, "[w]hile some defendants might benefit from a requirement that all facts — except the fact of prior conviction, interpreted in the narrowest possible sense — be found by a jury beyond a reasonable doubt, . . . such a requirement is far more likely to prejudice rather than protect defendants," *Santiago*, 268 F.3d at 156, a consideration that may well

counsel hesitation before a declaration is made that that is what the Constitution nonetheless requires in order to adequately protect defendants' rights.

As it stands for now, we, as a court of appeals, remain bound by *Almendarez-Torres*, which we do not understand the Supreme Court to have narrowed or modified in the manner suggested by Brown.  And the negative inferences that Brown advances based on some language in subsequent cases are for the Supreme Court to draw, not a court of appeals.  *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.  We reaffirm that '*if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls*, leaving to this Court the prerogative of overruling its own decisions'" (emphasis added) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989))).  Thus, unless and until the Supreme Court expressly overturns or narrows *Almendarez-Torres*, we conclude that our precedent in *Thompson* remains good law and that, based on the *Almendarez-Torres* exception to *Apprendi*'s general rule, it does not offend the Constitution to treat ACCA — including its "different occasions" requirement — as an enhancement to be applied by the district court at sentencing.  *See Thompson*, 421 F.3d at 285–86; *see also United States v. Moon*, 31 F.4th 259, 263–64 (4th Cir. 2022) (concluding, post-*Wooden*, that ACCA is not "a standalone criminal offense" but instead "merely a sentencing enhancement").

Accordingly, the judgment of the district court is

AFFIRMED.

TOBY HEYTENS, Circuit Judge, concurring in the judgment:

I agree this panel may not grant relief, but only because of the "pruden[tial]" rule that "one panel cannot overrule a decision issued by another panel." *McMellon v. United States*, 387 F.3d 329, 332, 334 (4th Cir. 2004) (en banc). I thus concur in the judgment.

In the past 20 years, the Supreme Court has incanted the same constitutional rule no fewer than nine times: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).[*]

I see two routes for saying a judge may decide whether a defendant, like Brown, committed previous offenses "on occasions different from one another," 18 U.S.C. § 924(e)(1), without violating *Apprendi*'s constitutional rule. The problem is Supreme Court decisions have blocked both paths.

The first avenue would be concluding the "different occasions" question presents an issue of law rather than one of fact. After all, nothing in the *Apprendi* line of cases disturbs "the good old rule that on questions of fact it is the province of the jury, [and] on

---

[*] See *United States v. Cotton*, 535 U.S. 625, 627 (2002); *Harris v. United States*, 536 U.S. 545, 563 (2002) (overruled on other grounds by *Alleyne v. United States*, 570 U.S. 99 (2013)); *Schriro v. Summerlin*, 542 U.S. 348, 350 (2004); *Blakely v. Washington*, 542 U.S. 296, 301 (2004); *United States v. Booker*, 543 U.S. 220, 231 (2005); *Washington v. Recuenco*, 548 U.S. 212, 216 (2006); *Southern Union Co. v. United States*, 567 U.S. 343, 348 (2012); *Descamps v. United States*, 570 U.S. 254, 269 (2013); see also *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) ("[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.").

questions of law it is the province of the court, to decide." *Sparf v. United States*, 156 U.S. 51, 64 (1895). But whether something happened in the past (here, conviction for a crime) is a quintessentially factual question—a point underscored by the Court's repeated use of the words "the *fact* of a prior conviction." Worse still, *Wooden v. United States*, 142 S. Ct. 1063 (2022), confirms the different-occasions analysis requires a "multi-factored" inquiry into "a range of" circumstances about a defendant's prior convictions. *Id.* at 1070–71. And probing the details about the "when," "where," "how," and sometimes even "why" of a defendant's previous conduct, see *id.* at 1071, is the precise thing the Sixth Amendment forbids judges from doing. See *Mathis v. United States*, 579 U.S. 500, 511 (2016) ("[A] judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense.").

The second road would be saying *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), provides a constitutional get-out-of-jail-free card for certain types of judicial factfinding, and the "different occasions" inquiry is one of them. I agree we may not overrule a Supreme Court decision or seek to predict whether the Court will do so. See *Agostini v. Felton*, 521 U.S. 203, 237 (1997). But *Almendarez-Torres* is not directly on point because it involved a different statute (the Immigration and Nationality Act) and a different question (whether the defendant in an illegal reentry prosecution was removed "subsequent to a conviction for commission of an aggravated felony"). 523 U.S. at 226 (quoting 8 U.S.C. § 1326(b)(2)).

What is more, the Supreme Court has repeatedly said the "narrow exception" to *Apprendi*'s general rule applies *only* to "the fact of a prior conviction," *Alleyne v. United*

*States*, 570 U.S. 99, 111 n.1 (2013), or "the simple fact of a prior conviction," *Mathis*, 579 U.S. at 511. But as both the statutory text and *Wooden* make clear, determining whether Brown's previous offenses were committed "on occasions different from one another," 18 U.S.C. § 924(e)(1), requires going far beyond the limited fact of his convictions. I see no reason why it is any more constitutionally permissible for courts "to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct" when the question shifts from whether that conduct was "violent" to whether it happened on different "occasions." *Descamps v. United States*, 570 U.S. 254, 269 (2013).

I recognize *Almendarez-Torres* speaks more broadly about "recidivism" and distinguishes between facts that are "sentencing factors" and those that are "elements" warranting constitutional safeguards. See, *e.g.*, 523 U.S. at 230. But the constitutional rule we must apply comes from *Apprendi*, not *Almendarez-Torres*. So we should be guided by the Supreme Court's repeated counsel about the scope of the "narrow exception" to *Apprendi*'s general rule (*Alleyne*, 570 U.S. at 111 n.1) rather than sweeping language and semantic distinctions that have largely been clawed back by later decisions. See, *e.g.*, *United States v. Haymond*, 139 S. Ct. 2369, 2379 (2019) (noting that, since *Apprendi*, the Court has "repeatedly rejected efforts to dodge the demands of the Fifth and Sixth Amendments by the simple expedient of relabeling a criminal prosecution a sentencing enhancement" (quotation marks omitted)); *Mathis*, 579 U.S. at 511–12 (stating that, under the Sixth Amendment, a judge "can do no more . . . than determine what crime, with what elements, the defendant was convicted of" without mentioning any general "recidivism"

exception); *Apprendi*, 530 U.S. at 494 & n.19 (dismissing, when it comes to facts that "increase beyond the maximum authorized statutory sentence," any constitutional distinction "between 'elements' and 'sentencing factors'").

The rub is that most everything I just said has been rejected by previous panels of this Court in cases involving the same statute and the same legal question. See *United States v. Span*, 789 F.3d 320, 330–32 (4th Cir. 2015); *United States v. Thompson*, 421 F.3d 278, 284–87 (4th Cir. 2005). Indeed, the heart of my concern—that the Sixth Amendment permits judges to find the "fact of a prior conviction" but not "fact[s] *about* a prior conviction"—was voiced by then-Chief Judge Wilkins in his dissent in *Thompson*. See 421 F.3d at 292 (Wilkins, C.J., dissenting) (quotation marks omitted).

True, this Court's precedent allows a panel to depart from an earlier decision that has been "overruled . . . by the Supreme Court," *McMellon*, 387 F.3d at 334, or which intervening Supreme Court authority renders "no longer tenable," *United States v. Banks*, 29 F.4th 168, 178 (4th Cir. 2022). But that is a high standard, and I am not confident it is satisfied here. Yes, the Supreme Court decided two cases bearing on this question—*Mathis* and *Wooden*—after this Court reaffirmed its position in *United States v. Span*, 789 F.3d 320 (4th Cir. 2015). But *Mathis* largely reiterated the teachings of *Descamps v. United States*, 570 U.S. 254 (2013), which, this Court concluded, did not warrant revisiting *Thompson*. See *Span*, 789 F.3d at 330–32. And *Wooden*, in turn, announced a case-specific and fact-intensive inquiry for the "different occasions" question not dissimilar to one this Court has applied for more than 25 years. See *Thompson*, 421 F.3d at 285 (discussing

*United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995)). In short, my arguments are not terribly new ones.

Concluding the choice to revisit this issue belongs to the en banc Court rather than this panel, I concur in the decision rejecting Brown's claim.